## DREWSON v. HARTJE PAPER MFG. CO.

(Circuit Court of Appeals, Sixth Circuit. June 16, 1904.)

No. 1,280.

1. PATENTS—EVIDENCE OF DATE OF INVENTION—PRINTED COPY OF PATENT.

The statement, in a printed copy of a patent issued and sold by the Patent Office, of the date when the application was filed, will be taken as prima facie evidence of such date, in the absence of objection, and the date of invention will be presumed to have been the same.

2. SAME—PATENTABLE NOVELTY—APPARATUS TO SEPARATE GASES FROM LIQUIDS.

The Drewson patent, No. 565,263, for an apparatus for separating gases from liquids under pressure, intended for use in the paper-pulp making art, to free the sulphurous acid gas blown off from the pulp digester from the cooking liquor escaping with it, is void for lack of patentable novelty.

Appeal from the District Court of the United States for the Southern District of Ohio.

This is a bill to enjoin infringement of the claims of patent No. 565,263. issued to the complainant, Viggo Drewson, "for certain improvements in apparatus for separating gases from liquids under pressure." The claims of the patent are as follows:

"(1) The combination of a separator for separating a gas and a liquid, a U shaped pressure-tube, one leg of which is connected with said separator, said pressure-tube being adapted to contain a column of liquid for maintaining the pressure in said separator, and a cooler for said separator for maintaining the liquid in a liquid state.

"(2) The combination of a pulp-digester, a separator for separating a gas and a liquid, a pipe connecting said digester with said separator, means for carrying off the gas from said separator, a U-shaped pressure-tube, one leg of which is connected to said separator for containing a column of liquid, and a cooler for said separator for maintaining the liquid in liquid form."

The patentee, in his specifications, thus describes the object of his invention:

"In the making of paper-pulp from wood by the sulphite process, the wood, in the form of chips, is cooked to disintegration and decomposition in a digester containing sulphite liquor under steam pressure and heat. During the cooking process a valve is opened at frequent intervals, and sulphurous acid gas blown off from the digester, which is afterward used in cooking a subsequent charge. In the blowing off, particles of the cooking liquid are carried off with the gas, and it is desirable to separate such particles of the liquor from the gas, as such liquor is impregnated with the impurities resulting from the decomposition

of the wood in the digester, and these impurities have a damaging effect upon the subsequent charge. The object of this invention is to provide a simple and convenient means for separating impure particles of cooking liquor from a sulphuric acid gas blown off during the cooking operation, so as to prevent the impurities thereof from being returned to the digester, and damaging the product of the subsequent cooking operation."

Fig. 1 of the drawing shows a side elevation of a pulp digester and reclaiming tanks provided with Drewson's apparatus. D represents a digester, provided with a pipe, a, leading out from the top thereof, through which gas is blown off, being regulated by a stopcock, a'. A represents the separator connected at its top with the outer end of pipe, a, and the sulphuric acid gas blown off from the digester, together with the cooking liquor carried as vapor or otherwise with the gas, is discharged into the top of this vessel. An outlet pipe, b, for the escape of the gases from the separator, leads out from the top to the reclaiming tanks, E and E'. A U-shaped pressure-tube, B, is connected at one end to the lower end of the separator, A, and at the other end with a discharge

pipe, F, provided with an upwardly extending vent pipe, G. This U-shaped pressure pipe is of sufficient height—say about 30 feet—and is filled with a suitable liquid, preferably water, so as to maintain a proper pressure in the separator, A. This U-shaped tube, B, is provided with a cooler, C, to prevent the liquid contained therein from being converted into steam and being blown off. This cooler, the inventor states, "is preferably in the form of a water jacket surrounding the lower portion of the said tube," etc.

The answer denied in general terms that Drewson was "the true, original, and first inventor of the apparatus for separating gases from liquids under pressure," and "denies that said apparatus was not known or used by others, and was not patented nor described in any printed publication before his alleged invention thereof." The answer also avers that, in view of the prior state of the art, the apparatus of the complainant did not involve patentable novelty, etc., and cites a large number of prior patents as anticipations; including among them, patent No. 545,550, September 3, 1895, to G. Symons.

Upon all of the evidence, the Circuit Court held both claims void for want of patentable novelty, and dismissed the bill.

J. E. Hindon Hyde, for appellant.
Wm. L. Pierce, for appellee.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

LURTON, Circuit Judge, after making the foregoing statement of the case, delivered the opinion of the court.

The first claim is broadly for an apparatus for separating a hot gas from a hot liquid. The second is limited to an apparatus for separating a specific hot gas from a specific hot liquid, and includes one additional element—a "pulp digester." It was not new in the pulpmaking art to utilize the hot sulphurous acid gases generated in a pulp digester to assist in cooking a fresh charge. The patentee, in his recital of the state of the art, admits this, but says that this valuable gas was blown off, mixed with cooking liquor impregnated with impurities resulting from decomposition of the wood in the digester. The object of his invention was simply to separate the valuable gas from the impure particles of cooking liquor which had theretofore been carried with the gas into the reclaiming tanks. As early as February 21, 1893, the patentee himself had obtained a patent for a method of utilizing this gas by forcing the hot gas into a new charge of cooking liquor at or near the bottom of a reclaiming tank, and causing the gases "to percolate through said liquor in direct contact therewith." That patent shows a pipe leading from the digester to the bottom of the reclaiming tanks. Of this pipe the specifications say:

"The gases are conducted from the digester through the supply pipe, a, into the lower part of the tank, A, in which the liquor for cooking the next charge of wood is placed."

The defect in this was that the apparatus described by him for using his process did not provide a means for separating the sulphurous acid gas blown off from the digester, and carried by his pipe, a, to the bottom of the reclaiming tank, from the particles of impure cooking liquor likely to be mixed with it. But it is a mistake to say that Drewson's first patent did not show an apparatus for forcing this hot gas into the new charge of cooking liquor. That it did not show an apparatus for effectually separating the desirable gas from the undesirable contaminated cooking liquor may be conceded. But Drewson was not the

first to discover the economical advantages in utilizing this waste sulphurous acid gas. See the patent to Tilghman, No. 70,485, and to Mitschenlich, No. 263,797, as well as others in evidence in this case, all prior to both of Drewson's patents. The case therefore narrows itself to the question as to whether it was invention to make an apparatus which will separate this hot sulphurous acid gas from an undesirable hot liquid likely to be blown off with the gas from the pulp digester. But it was not new to separate a gas from a liquid by means substantially identical with those shown by Drewson's patent. Separators with both air-cooled and water-cooled U-shaped pressure-tubes are found in connection with apparatus for the distillation of turpentine, glycerine, petroleum, and other articles. We need only call attention to the patent to Hawes for a turpentine still, to Laist for a glycerine still, and to Marrin for apparatus for refining petroleum and tar, and to Culmer for apparatus for a "separator condenser." The separating chamber of the Marrin patent is a vessel which receives a mixture of gas and liquid. Pipes running from the bottom convey the liquid to receiving tanks. "These pipes," says Prof. Wagner, the defendant's patent expert, "at the end next to the separator, are bent into U-shape, and form pressure-tubes which balance the difference in the pressure between the separators and the outlet end of the pipes." These U-shaped pipes and the separator itself are immersed in cooling water contained in a tank, which answers to the element "a cooler" in the claim of the patent. So in the patent to Laist of October 9, 1883, for an apparatus for the manufacture of glycerine shows a water-cooled U-shaped pressure-tube in connection with a worm from distilling apparatus. An apparatus even more closely identical is that shown in the patent to G. Symons for an apparatus for separating liquid from gas, automatic in its operation. This latter shows no cooler, and in that respect only differs from the device of Drewson. But it is said that for the purpose of the Drewson patent—the separation and reclamation of a hot gas from a hot liquid—the Symons patent would be inoperative. This failure, says Prof. Hutton, the complainant's expert, would be due to the continuous vaporization of the hot liquid standing at the top of the open arm of the U-shaped tube, which he says would be a vaporization explosive in character, which would carry out through the free end of the tube its entire contents if this liquid was at a temperature above the boiling point of the liquid contents. Conceding this, the problem presented would be to devise a cooler which should prevent such vaporization. But this was not a problem involving the exercise of invention. The cooling devices in use in condensing and distilling apparatus shown in the old patents to Howe, Laist, Marrin, Culver, and others, shown in evidence, make it plain that to apply a cooler to a column of hot liquid to prevent vaporization, or to a column of vapor to induce condensation, would involve nothing more than mechanical skill in one desirous of using the Symons device to separate a hot gas from a hot liquid. The utilization of some of the devices of the distilling art to the separation of a hot gas from a hot liquid might require an increased length of the legs of the U-shaped pressure-tubes shown therein, but this would be an obvious matter

131 F.—47

to one skilled in the art as the proper means for dealing with the difference of pressure between the outlet pipe of a pulp digester and the atmosphere.

But it is said that the Symons patent is pleaded in the answer as an anticipation, and that it is not, in fact, such a patent. The Drewson patent in suit was issued August 4, 1896. The Symons patent was issued Sept. 3, 1895. But counsel for Drewson say that this patent was applied for June 12, 1895—a date antecedent to the issuance of the patent to Symons. The Drewson application is shown by a certified copy of the file wrapper and contents. The defendants offered in evidence a Patent Office printed copy of the letters patent No. 545,550, issued to George Symons. This contains the usual recital, "Application filed Jan. 17, 1895, serial No. 535,191." Section 892, Rev. St. [U. S. Comp. St. 1901, p. 673], reads as follows:

"Written or printed copies of any records, books, papers or drawings belonging to the Patent Office, and of letters patent, authenticated by the seal and certified by the commissioner or acting commissioner thereof, shall be evidence in all cases wherein the originals could be evidence; and any person making application therefor, and paying the fee required by law, shall have certified copies thereof."

This copy is not certified. But no objection was made on this or any other account, and the copy filed was received without any objection of record. The practice of waiving the certificate when a printed copy from the Patent Office is presented is probably universal. Walker on Patents, § 506. If the complainant had wished to object to the printed copy either because it had not been certified, or because it included the statement of the date of the filing of the application, or of the serial number of the application, he should have seasonably pointed out his objection, so that the complainant might have an opportunity to supply the defect. It may be that the date of the application, now universally found upon the Patent Office copies of letters patent, is not the best evidence of the filing date, inasmuch as such date is not technically a part of such letters, and that the date of filing the application should be shown by a certified copy of the application itself. Walker on Patents, § 129. It is unnecessary to decide this. The practice in this circuit has been to regard the date of filing an application as prima facie shown by the date stated in the printed copies of patents supplied by the Patent Office. In this case no objection to using the printed copy as evidence of the date of application is shown by the record, and no error has been assigned because the court below carried the date of the Symons patent back to the date of the filing of the application, as shown by the copy of the patent. The objection should have been made in season to have enabled the complainant to file a certified copy of the Symons application. Not having been made below, or if made not made upon the record, it is too late to make it here. The date of letters patent is prima facie the date of the application, in the absence of other evidence of a different date. Worley v. Tobacco Co., 104 U. S. 340, 342, 26 L. Ed. 821. The statement in a printed copy of letters patent issued and sold by the Patent Office is, in the absence of specific objection, prima facie evidence of the date

when the application was filed. The omission to object to evidence of prior invention at the proper time, because not set out in the answer as required by statute, is fatal, and the objection cannot be made on appeal. Roemer v. Simon, 95 U. S. 214, 220, 24 L. Ed. 384; Loom Co. v. Higgins, 105 U. S. 580, 26 L. Ed. 1177. In the absence of other evidence, the invention of the patent is presumed to be identical with that disclosed by the application. Loom Co. v. Higgins, 105 U. S. 580, 594, 26 L. Ed. 1177. Symons applied for his patent January 17, 1895— several months before the date of the filing of the Drewson application. The date of the first application, in the absence of any other evidence of the date of an invention, must be taken as establishing the date of the first invention. It follows, therefore, that the patent to Symons not only has the earlier issue date, but prima facie covers the earlier invention, and was therefore entitled to be regarded as an anticipating patent. The apparatus covered by the latter patent to Drewson is the apparatus of the earlier Symons patent, with a cooler added. The addition of a water jacket to the U-shaped tube of Symons was not invention. It was, at most, the application of an old device to the same use in a different industry.

The contention that the apparatus of Drewson is in some way peculiarly adapted to accomplish the saving of sulphurous acid gas, thereby solving a problem of great and peculiar difficulty in the paper-pulp making art, has been given careful consideration. But we have been unable to sustain the contention. All of the advantages of utilizing this gas when blown off from a pulp digester were well known, and the simple problem presented to Drewson was the arrangement of a separator which would separate a hot gas from a hot liquid in order to prevent the contaminated liquor mingled with the gas from passing with the gas into the reclaiming tanks. He found in the old arts various kinds of separator apparatus, and in the patent to Symons he found the device best suited to his purpose, provided he could cool the liquor in the pressure tubes so as to prevent its vaporization. The old art supplied him with many forms of coolers. The best way of keeping the water in his U-shaped tube cool enough to prevent vaporization did not present so difficult a problem as that considered in Solvay Process Co. v. Michigan Alkali Co., 90 Fed. 818, 33 C. C. A. 285, where it was held that the adaptation of a well-known method of cooling a column of hot liquid to the same purpose in another art was not invention.

The decree of the court below is accordingly affirmed.