EMPIRE CREAM SEPARATOR CO. et al. v. SEARS, ROEBUCK & CO.

No. 221.

(Circuit Court of Appeals, Second Circuit. April 4, 1908.)

PATENTS—INFRINGEMENT—CREAM SEPARATORS.

The Andersson patent, No. 555,893, for an improvement in centrifugal cream separators, which consists essentially in the use of an eccentrically pierced rotable plug through which the cream flows after being separated from the milk, was not anticipated, and discloses invention, but is restricted by the prior art within very narrow limits. As so construed *held* infringed by one device used by defendant, but not by others.

Appeal from the Circuit Court of the United States for the Southern District of New York.

On appeal from a decree of the Circuit Court entered December 3, 1907, holding valid and infringed both claims of letters patent No. 555,893 granted March 3, 1896, to Gustaf M. Andersson for improvements in centrifugal cream separating apparatus. The opinion below is reported in 157 Fed. 238.

Frank T. Brown, Francis A. Hopkins, and Andrew Foulds, Jr., for appellant.

William Houston Kenyon, for appellees.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

COXE, Circuit Judge. The Andersson patent, relates to a minor and subsidiary part of an exceedingly ingenious and useful machine, viz: an eccentrically pierced rotable plug, through which the cream flows after being separated from the milk by the action of a centrifugal separator. The patentee states that the object of the invention is to provide a delicate adjustment of the fluid outlet from the separating drum, so as to secure thick or thin cream at the will of the operator, the thin cream being nearest the periphery of the revolving drum and the rich cream at the center.

The specifications says:

"The outlet for the lighter fluid is an adjustable plug a, rotatively mounted in an opening in the upper wall of the main separating chamber of the drum and preferably screw-threaded exteriorly. This outlet-plug is pierced eccentrically, so that when this outlet-plug is turned the orifice will be moved toward or from the axis of the separating drum. * * * The outlet-plug a is located at a distance from the axis of the drum corresponding very nearly with the radius of the inner wall of the fluid within the drum during the operation of the drum. The intense centrifugal force resulting from the rapid revolution of the drum causes the separation of the particles of the fluid and a rearrangement of the particles according to their specific gravity, the heavier particles arranging themselves near the periphery of the drum and the lighter particles arranging themselves nearest the axis of the drum. Now the position of the outlet a' for the lighter particles determines the density of the lighter fluid that passes out through such outlet a', for the reason that the outlet for the heavier fluids is fixed, and the relative positions of these two outlets determine through the equilibrium of the fluids the density of the fluid which will flow out through the outlet a'. As the fluid supplied to the separating-drum is not always of the same consistency, it becomes necessary at various times to slightly adjust the outlet a', even when the device is always used upon the same character of material, as well as to initially delicately adjust the outlet."

The claims are as follows:

"1. In a centrifugal separator, the combination with the separator-drum of an eccentrically-pierced rotable plug fitted in the walls of a separating-chamber of said drum and so arranged that the rotation of said plug adjusts the distance from the axis of the drum to said eccentric opening, substantially as set forth.

"2. In a centrifugal separator, the combination with the separator-drum of the rotable screw-plug a, having the eccentric orifice a' formed therein and fitted in the walls of a separating-chamber of said drum, substantially as set forth."

The only distinction between the claims from a legal point of view is that the second claim is limited to a screw-plug. In short, the entire controversy relates to a rotable plug, but little larger in diameter than an ordinary lead pencil, with a hole through it between the axis and periphery.

The main defense relied on is that, if Andersson has made any invention at all, it must, in view of the prior art, be restricted within the exceedingly narrow limits permitted a simple improvement in a well known art.

Williams in his patent No. 500,787 of July 4, 1893, shows a centrifugal creamer with a vertical tube attached to the separator bowl and so located that it comes just where the cream wall and milk wall meet, the thickness of the cream being varied by means of a screw threaded nozzle in the end of the tube. The Williams application

was filed May 12, 1892. That such a patent may be considered, though issued after the application of the patent in controversy, is decided in Drewson v. Hartje Co., 131 Fed. 734, 65 C. C. A. 548. A prior patent to Petersen and Nielsen is for the delivery of different grades of cream from the separator by means of a discharge pipe adjusted forward or back, to regulate the discharge of cream. Bergh, in 1887 (No. 14,120), provided his separating machine with one or more small pipes screwed into the neck and thus rendered adjustable therein. The Malmros machine has a concentrically pierced radial screw-plug capable of being screwed in or out to tap the thick or thin cream, respectively. This is the principle upon which the plug of the De Laval Company operates. They employ a rotable plug with a hole through the center, located in the vertical wall of the neck of the separating-chamber, with its axis radial to the axis of the chamber so that it may be screwed to take the thick or thin cream as desired. The De Laval Company has also used a solid plug which is located as is the one last mentioned, but so arranged that its inner end projects into a vertical passage through which the cream passes, the flow being regulated by the extent of the obstruction of the passage by the plug. All of these and similar constructions, showing inconsequential changes and variations, were described in patents and publications or were in actual use prior to the Andersson's application. Though none of them anticipates, the field of invention is confined within exceedingly narrow limits.

Indeed, the persistency with which the defendant clings to the vertical rotable plug furnishes one of the principal reasons which leads us to reject the defense of non-patentability. The problem was so simple and so many solutions were offered by the prior art that it would seem that a mechanic of very ordinary skill should have found a successful solution without adopting the eccentrically pierced rotable plug. For instance, a series of small vertical passages with openings at the top of the neck might have been arranged with a sliding or pivoted cover having one opening therein to register with the opening of the passage which the operator desired to use, the other openings remaining closed. We see no reason, either, why the De Laval solid plug inserted radially but with an opening through it at right angles to its axis near its end, the plug crossing an oblong vertical passage to the cream wall with an opening at the top of the neck—the opening being less in width than the diameter of the plug—could not have been made available. In this way when the plug is screwed in or out the opening in the plug may be brought into a vertical position at any desired distance for discharging rich cream or otherwise. Again, a vertical plug with a concentric opening through it and a pipe at the lower end extending from the concentric opening and at right angles thereto to a point near the periphery of the plug, might have been utilized.

These suggestions are only made tentatively to illustrate some of the methods which even a layman might adopt to facilitate a result, the importance of which was known to all, viz.: a discharge opening, the intake of which could be varied slightly with reference to the position of the cream. However, we are inclined to give the benefit of

the doubt to the patent and are of the opinion that Andersson has made a sufficient improvement to entitle him to protection against one who uses that improvement.

As the first plug made by the defendant was a Chinese copy of the patented plug, the decree, so far as the "Old Style" plug is concerned, was properly granted. As to the other plugs in controversy we are of the opinion that a construction broad enough to cover them will invalidate the claims. It is unnecessary to go to the lexicographers to ascertain the meaning of the word "pierced" for we have the patentee's own definition. The drawings show an opening straight through the plug from top to bottom and there can be no doubt that he used the word to describe such an opening. He shows no other construction. Not only have the defendant's plugs "New Style" and "Latest Model," no eccentric orifice in the sense of the patent, they have no orifice of any kind. The "New Style" plug operates in connection with a fixed aperture in the bowl which is opened to a greater or less degree by turning the plug which has a deep groove or channel cut therein extending across its lower half at right angles to its axis. The "Latest Model" is simply the "New Style" with one of the walls of the channel cut away.

An elaborate and ingenious argument is presented by the complainants to prove that the defendant's groove is the eccentric piercing and eccentric orifice of the claims. Such reasoning may convince the highly trained mind of the expert but will probably fail to impress those who have nothing to rely on but plain common sense. One who gives to the words of the claims the obvious meaning intended by the patentee, will hesitate long before reaching the conclusion that a screw which has one side of its lower half cut away is eccentrically pierced, or pierced at all. If we construe the claim broadly enough to cover the defendant's plugs, they will also cover the De Laval and other structures of the prior art. The orifice through which the cream flows in defendant's machine, is not in the plug but in the neck of the bowl. The plug, revolving across the lower end of this passage-way, regulates the density of the cream by making the opening wide or narrow as the operator may desire. All of the manufacturers of cream separators have adopted devices for regulating the density of the flow. They accomplish substantially the same result in substantially the same way.

The complainant's plug is simple and efficient, and we think, has some advantages over the other devices shown. The defendant while employing, as all must do, the general features necessary to secure proper regulation, does not employ the complainants' improvement. In view of the fact that the defendant has made the identical device of the patent, and that the decree is general in character, not specifying the "New Style or Latest Model" as infringing plugs, it would seem that the decree as entered is correct, but as the controversy in this court has centered around the "New Style" and "Latest Model" plugs, there should be a modification of the decree making it clear that neither the injunction nor the accounting applies to the plugs last mentioned.

Even if complainant's counsel be correct in the assertion that the "Latest Model" is not involved in this appeal, we think it for the interest of all concerned that all doubt regarding it should now be removed. It is true that strictly speaking these questions could more properly be considered upon an appeal from a final decree, but there is every reason why the parties should not be subjected to the expense of futile litigation.

We think the best disposition to make of the matter is to remand the cause to the circuit court with instructions to amend the decree by excluding from its provisions the two plugs last mentioned.

Neither party is entitled to costs in this court.