## THOMPSON et al. v. N. T. BUSHNELL CO.

(Circuit Court of Appeals, Second Circuit. May 25, 1899.)

### No. 150.

1. PATENTS—DISCLAIMERS.

A patent claimed a saw for cutting metal, having its teeth hardened to their base line, or line of juncture with the body of the blade, leaving the latter tough and pliable. The court, in an infringement suit, having intimated that the patent could be sustained if limited to hack saws and band saws, the owners of the patent filed a disclaimer as to circular and back saws. *Held*, that this was a proper disclaimer, and did not add any new element to the claim.

2. SAME—TIME OF FILING DISCLAIMER.

That a patent owner did not file a disclaimer immediately upon the introduction, in an infringement suit, of evidence of anticipation as to certain features of the claims, *held* not unreasonable delay, when the trial court itself did not consider a disclaimer necessary, and the necessity therefor was first suggested by the appellate court, and the disclaimer was filed within a month and a half thereafter.

3. SAME—RIGHT TO INJUNCTION—ACCIDENTAL INFRINGEMENT.

A patent owner is entitled to protection against one who has in fact made and sold some infringing articles, though the infringement is claimed to have been accidental.

4. SAME—IMPROVEMENT IN METAL SAWS.

The Fowler patent, No. 328,019, for an improvement in saws for cutting metal and other hard substances, consisting of hard-tempering the teeth and adjacent portion of the saw, only, leaving the rest of the blade tough and pliable, *held* valid, as to both the claims, if limited to the teeth and an

adjacent strip not exceeding the depth of the teeth, to wit, $1/32$ of an inch, and also *held* infringed.

Wallace, Circuit Judge, dissenting.

Appeal from the Circuit Court of the United States for the District of Connecticut.

This cause comes here upon an appeal from an interlocutory decree of the circuit court, district of Connecticut, granting an injunction against infringement of United States patent to Thaddeus Fowler, No. 328,019 (October 13, 1885), for improvement in saws. 88 Fed. 81. The facts will be found in the opinion.

M. B. Phillipp, for appellant.

John K. Beach, for appellees.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge. A brief recital of the litigation which has arisen upon this patent, with references to former opinions, will make it unnecessary to enter into any elaborate analysis of the invention covered by it, since the record now before the court does not present any important variances from that considered on the former appeal. The specification sets forth that the—

"Invention relates to certain novel and useful improvements in saws, but more especially to that class of saws used in cutting metal and other hard substances, and has for its object to furnish a saw which, while hard as to its teeth, so as to insure a durable cutting edge, shall be of such temper as to its body as to prevent its breaking when subjected to sudden cross strain or twist; and, with these ends in view, my invention consists in the article of manufacture hereinafter described, and then specifically designated by the claims."

The specification then proceeds to set forth in detail the patentee's method of construction, and concludes with two claims, as follows:

"(1) As a new article of manufacture, a saw as described, made from tough, pliable steel, and having the teeth thereof hardened to a high temper down to their base line, or line of juncture with the body of the blade, substantially as described. (2) A saw, as described, of a single piece of metal, with a soft back, and high-tempered, hard teeth, as specified."

No litigation seems to have arisen upon the patent until a suit was begun by the present plaintiffs, then the owners, against one Jennings and another, for alleged infringement. That suit came on for final hearing in the circuit court, Southern district of New York; and on May 25, 1894, that court filed an opinion, which will be found reported as Thompson v. Jennings, 66 Fed. 57. A somewhat full synopsis of that opinion will be necessary to a proper appreciation of the precise questions presented upon this appeal. After referring to the four classes of saws to which the patent refers (those used for cutting metal), viz. circular, back, hack, and band saws, the opinion proceeds to a discussion of the prior state of the art. It states that both circular saws and back saws had been made prior to the patent with the cutting teeth and the adjacent strip hard, and the body soft, with the distinct purpose of preventing breakages, and thus strengthening the saw. The same evidence as to circular saws and back saws is in the present record, and also some additional evidence, showing that in the prior art hack saws

had occasionally been treated in the same way,—hard temper put in the cutting teeth and adjacent strip, with the body soft. Although this proof as to hack saws was not in the prior record, the court, in the Jennings Case, held that there "would seem to be no invention in the mere application, for the same purpose, to the toothed edge of [hack and band] saws of the fractional tempering already in use with circular and back saws." The circuit court, in the Jennings Case, however, found that there was invention, novelty, and utility in arranging the relative tempering of the tool so as to confine the hardness to the cutting teeth, with the result of a tool in which bending or twisting produced practically no break at all. "Seemingly," said the circuit court in that case, "this is a desirable result in hack saws, where sideways twists are not measurably prevented by the back clamps, and especially desirable in band saws, where constant sideways twists are inseparable from their operation. And there is no evidence that in either of these varieties of saw was such an arrangement of temper used before the date of the patent." The court might have added, "nor was such an arrangement used even in circular and back saws," for that record did not disclose any prior use of such tempering confined to the teeth. The record in this case at bar contains the testimony taken in the Jennings Case, and also some further testimony as to tempering hack saws. We do not find, however, that such further proof establishes an anticipating use. It was directed to the same end as in the case of circular and back saws, namely, the securing of a tougher saw by having the teeth and the front strip hard, and the back soft. One of the witnesses (Vauthier) testifies to tempering "about the bottom of the teeth," but all the others (and they are all testifying to the same use, in the shops of the American Screw Company) concur in the statement that there was a tempered strip below the teeth. Of the location of the dividing line of temper, Birge says it was "about as near to the teeth as the depth of the teeth"; McIntosh says, "about one-eighth inch below the bottom of the tooth"; Hatten says, "to within a certain depth of the tooth"; Salesses says, "about one-sixteenth of an inch into the saw from the base of the teeth." We do not find in this record, therefore, any more satisfactory evidence than the court found in the Jennings Case that the prior art possessed a metal saw in which the high temper was confined to the teeth. The conclusion expressed in the Jennings Case reads as follows:

"The first claim is for a saw as described, made from tough, pliable steel, and having the teeth thereof hardened to a high temper down to their base line, or line of juncture with the body of the blade, substantially as described. Inasmuch as such a saw appears by the testimony to present features of novelty and utility not found in the prior saws, which were either tempered uniformly, or else so tempered that not only the teeth themselves, but adjacent strips of the blade, were hardened, this first claim is sustained."

The complainants in the Jennings Case contended further that under the second claim they were entitled to cover saws which also have a strip of the metal adjacent to the teeth tempered as they are. The circuit court in that case repudiated any such proposition as broadly stated, finding it to be wholly inconsistent with the pre-

cise language of the specification, and with the necessary restrictions which the prior art imposed. The opinion quoted from the testimony of the complainant's expert:

"The ideal saw of the patent would consist of a tough, soft, pliable body or back, with a series of hard teeth grafted or applied, so to speak, upon one of its edges; each tooth being virtually separated from its neighbors by an infinitesimal joint of soft metal."

Nevertheless, recognizing the practical difficulty of locating the temper line so that it would be mathematically coincident with the bases of the teeth, the court reached the conclusion that the patentee was entitled to include, under the second claim, blades where the temper line extended some unappreciable distance into the blade beyond the bases of some or all of the teeth; such trivial variance being apparently not detrimental to the usefulness of the saw. The distance beyond the bases of the teeth to which such temper might extend without departing from the blade of the patent was not precisely defined; but it was noted that in the prior art the tempered strip below the teeth had been found, in some instances, to be as narrow as the depth of the teeth, from which it was concluded that blades in which the tempered strip was wider than the depth of the teeth were not within the patent. It appearing that the defendants' saws in the Jennings Case had teeth somewhat less than $1/32$ of an inch in depth, and a high temper extending into the blade $4/32$ below the bases of the teeth, the circuit court held that there was no infringement, and dismissed the bill. The Jennings Case was appealed to this court, which on May 28, 1895 (21 C. C. A. 486, 75 Fed. 572), affirmed the decree of the circuit court. No opinion was written, the court stating that it was deemed unnecessary to add anything to the opinion of the circuit judge; but it was intimated that the patent could be sustained only if limited to hack saws and band saws. Acting upon this suggestion, the owners of the patent on July 18, 1895, filed a disclaimer in the patent office "of so much of said claims as covers circular saws and back saws, leaving said claims to include only back saws and hand saws." Thereafter they brought this suit, and upon proof that defendants had sold some saw blades that in the opinion of the court were "either hardened to the base line of the teeth, or so near it that the variance from the distinctive fractional tempering of the patent was trivial," the circuit court entered an interlocutory decree for injunction and accounting, from which decree this appeal is taken.

The appellant contends that the disclaimer is not a proper one, and is therefore void. The theory of this contention is that there is no separate invention, and that, inasmuch as the different kinds of metal saws known to the art are distinguished from each other by their particular kind of mounting, a restriction of the claim to any one kind of saw is practically adding to the claim a new element, to wit, the kind of mounting. Reference is made to Machine Co. v. Searle, 8 C. C. A. 476, 60 Fed. 82, and to Hailes v. Stove Co., 123 U. S. 582, 8 Sup. Ct. 262, where it is held that disclaimer cannot be availed of when "it requires an amended specification or supplemental descrip-

96 F.—16

tion to make an altered claim intelligible or relevant." But this cause is not within such ruling. The invention, and the sole invention, of the patent, as was held in the Jennings Case, consisted in locating the temper line practically coincident with the bottoms of the teeth. It is manifest that this location of the temper line might be applied to any one of the four well-known varieties of saw,—circular, back, hack, or band; but, if applied to circular or back saws, it would subserve no useful purpose, and the patent might fairly be held void for want of utility. When applied to hack or band saws, however, it would accomplish "a desirable result," as the circuit court and this court both held. The phraseology of the claims, however, read in connection with the specification, was broad enough to cover all four varieties of the class known as "metal saws," although as to two of them it was useful, and as to the other two useless. Certainly there was an actual, separable invention, and a specification and claim broader than the invention. In view of the fact that the four varieties of this class of saw were well known to the art, and their differences clearly recognized, as the evidence shows, no amended specification or supplemental description is required to make the new claim intelligible, and a disclaimer of circular and back saws leaves the patent in force as to the other varieties of the class.

There is no force in the contention that there has been any unreasonable delay in filing the disclaimer. Defendant insists that the owners of the patent should have realized the necessity of so doing when the evidence as to prior use of a narrow tempered strip in circular saws and back saws was introduced in the Jennings Case (November 28, 1892). But the circuit court in that case, with such evidence before it, did not consider disclaimer necessary. It was only when the decision of this court was filed, May 28, 1895, that the owners of the patent were apprised of the necessity of disclaimer, and they filed it in July, 1895. They certainly acted with reasonable promptness.

As already indicated, the evidence taken in this cause does not differ materially from that which was before this court in the Jennings Case. There was some testimony as to prior use of a tempered strip extending a little below the bases of the teeth in hack saws. The circuit court in Connecticut apparently discredited this proof, but it really makes little difference whether it be accepted or not. There was abundant proof in the Jennings Case that such a strip was a part of the prior art in circular saws and back saws. The circuit court in that case held that such proof made it necessary to restrict the patent to saw blades where the line of temper is practically coincident with the bases of the teeth, or at most does not extend more than their own depth below; and the court of appeals sustained that conclusion. One of the additional witnesses testifies, without much positiveness, that the temper of saw blades was sometimes confined to the teeth; but the other witnesses to the work in the same shops put the line of temper, as did the witnesses in the Jennings Case, who told of circular and back saws, at about, or more than, the depth of the teeth below their bases. To this limit, in our opinion, the

second claim of the patent in suit must be restricted. The first claim covers blades where the temper is mathematically coincident with the base of the teeth. The circuit court of Connecticut, in the decree now appealed from, inserted a proviso that the decree and injunction should not cover band and hack saws where the strip of high temper extended below the base of the teeth more than one-eighth of an inch. In the Jennings Case the circuit court indicated that the proper limit of the width of such strip should be not to exceed the depth of the teeth, to wit, one thirty-second of an inch. We concur in this conclusion, and are of the opinion that the proviso in the decree appealed from should be modified accordingly.

That some few of defendants' blades, out of a package which complainants claimed to infringe, did not disclose any hard temper beyond $1/32$ of an inch below the bases of the teeth, is hardly controverted. It is urged that they were accidentally made and unintentionally sold. But the owner of a patent is entitled to protection against the repetition of accidental infringements. Upon this point the judge who heard this cause in the circuit court says, "If, as they now contend, the saw of the patent in suit is impracticable, and the flexibility which results from the invention of the patent in suit is a disadvantage, the defendant will not suffer from the effect of an injunction which will operate to prevent its making such defective saws in the future accidentally or otherwise,"—an expression of opinion in which we fully concur. Except as to a modification of the proviso as indicated above, the decree of the circuit court is affirmed.

WALLACE, Circuit Judge (dissenting). When this cause was previously before this court, it came before us upon an appeal from a decree dismissing the bill because infringement had not been established. It was unnecessary then to pass upon the question of the novelty of the alleged invention, and this court affirmed the decree below without discussing the question. I cannot concur in the opinion of the court now delivered, because I think there was no patentable novelty in Fowler's alleged improvements in saws, as defined by the second claim of the patent. It was well known in the prior art that there were advantages in having the body of a saw soft, and the teeth hardened to a high temper; and circular saws and back saws were made in that way, the object being to prevent breakages of the whole saw from twist or shock, and confine them to the teeth or the hard-tempered adjacent area. The purpose of the present invention was to accomplish the same object so that the teeth can be used until worn away, while the body of the saw will yield to bend or twist, and be sufficiently pliable not to be broken in use. The description of the invention contains two inconsistent statements. The patentee first states that, in constructing the saw, care is to be taken "that the hard temper is confined to the teeth alone, and does not extend at all into the body of the saw." Subsequently he states that, while able to temper the blade so that the temper line may be at any point in the width of the blade, "I preferably fix upon the base line of the teeth as the best and most advantageous point." The first claim is by its

terms confined to a saw of the first description; the second has in its terms no other limitation than that the saw is one "with a soft back, and high-tempered, hard teeth; as specified." In the present case it is sought to make the second claim cover any saw in which the temper line is approximately near the line of juncture between the teeth and blade. There is no evidence to show that in the prior art saws had been made with the temper line located precisely at the juncture between the blade and the teeth. If this peculiar location was beneficial, the patentee was entitled to make it the subject of a patent, and the first claim secures a monopoly of that improvement. A saw having the temper line approximately in that location has no advantages not possessed by the saws having it precisely at that location, except in the imaginations of expert witnesses. It is shown by the proofs in the present record that it was not new to make saws, of the description to which by the disclaimer the patent is now confined, with the temper line near the line of the teeth,—according to the witnesses, "about the bottom of the teeth," or "about $1/16$ of an inch from the base of the teeth," or "about as near to the teeth as the depth of the teeth." In my judgment, this evidence negatives any novelty in the second claim. When it becomes necessary to discriminate between a temper line which is within or beyond $1/32$ of an inch from the base of the teeth, and make the validity of the patent and the question of infringement depend upon that test, this seems to me to be splitting hairs, and, in view of the prior art, to be sustaining a patent for a mere change of degree, and utterly unwarranted.

As it is not pretended that the first claim of the patent is infringed, there should be a reversal, instead of a modification, of the decree of the court below.