KAWNEER MFG. CO. v. TOLEDO PLATE & WINDOW GLASS CO.

(District Court, E. D. Michigan, S. D. July 23, 1915.)

1. PATENTS ☞328—VALIDITY AND INVENTION—STRUCTURE FOR HOLDING PLATE GLASS.

The Plym patent, No. 852,450, for a structure for holding heavy plate glass in position, was not anticipated and discloses patentable invention; also *held* infringed.

2. PATENTS ☞66—ANTICIPATION—PRIOR PATENT TO SAME INVENTOR.

The test to be applied as to the validity of a patent with reference to an earlier patent to the same inventor is a comparison of the scope and breadth of the claims of the two patents.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§.79, 81; Dec. Dig. ☞66.]

3. PATENTS ☞35—EVIDENCE OF INVENTION—COMMERCIAL SUCCESS.

Difficulties encountered by a patentee in attempting to introduce his patented device, followed by its later commercial success, are persuasive evidence of invention.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 39; Dec. Dig. ☞35.]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. PATENTS ☞227—SUIT FOR INFRINGEMENT—DEFENSES.

The intention of a defendant is immaterial on the question of infringement.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 358; Dec. Dig. ☞ 227.]

5. PATENTS ☞234—INFRINGEMENT—IMPAIRMENT OF FUNCTION OF DEVICE.

Infringement is not avoided by impairment of the functions of a patented device in degree, if the features are retained.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 370, 381; Dec. Dig. ☞234.]

6. PATENTS ☞327—SUITS FOR INFRINGEMENT—EFFECT OF PRIOR DECISIONS.

Decisions respecting the validity of a patent are entitled to consideration in a subsequent suit in a court of equal jurisdiction, the weight to be given them depending on the circumstances in each case.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 620-625; Dec. Dig. ☞327.]

In Equity. Suit by the Kawneer Manufacturing Company against the Toledo Plate & Window Glass Company. On final hearing. Decree for complainant.

Wallace R. Lane, of Chicago, Ill., for plaintiff.

Wilber Owen, of Toledo, Ohio, Phillip C. Dyrenforth and Robert Lewis Ames, both of Chicago, Ill., Paul Bakewell, of St. Louis, Mo., Edwin C Lewis, of Detroit, Mich., and Jones, Addington, Ames & Seibold, of Chicago, Ill., for defendant.

TUTTLE, District Judge. This is the ordinary patent suit in that the plaintiff asks for an accounting and injunction against the defendant for infringing patent, and also usual in that the defense offered is lack of validity of the patent and lack of infringement by the defendant's structure.

[1] The patent in suit is No. 852,450 to Plym, May 7, 1907, for a structure for holding heavy plate glass in position for show windows, or for any similar purpose. The objects to be attained are several. It should be held in such a way as not to mar the beauty of the window, by supports in the center or through the pane of glass. Because of the fact that glass expands and contracts when subjected to different temperatures, it makes it necessary that the holding shall yield sufficiently so that it will not break the glass when it expands, and at the same time not hold the glass too loosely when it contracts. In order to lessen the danger in this regard it is desirable that there should be ventilation from the outer side of the pane of glass to the inner side, so that the cool air from the outside can pass in and spread over the inner surface of the glass, and equalize the temperature so far as possible, and avoid unequal expansion and contraction, which is dangerous to the glass.

The glass is subjected to pressure by currents of air, as well as liable to be subjected to pressure from persons who might lean against the glass. These pressures may be exerted from either side, but are more likely to occur from the outer side. It is therefore desirable to have the glass so set that it shall be held with sufficient rigidity to resist these

pressures, and at the same time in a manner sufficiently yielding so that it will not break at the holding point. If it is held absolutely rigid at the holding point, then, when strains are exerted upon the glass by the wind, it could not bend in at its central portion without breaking at or near the holding point.

It is also desirable that moisture which may accumulate on the inner surface of the glass, either from the atmosphere or when the window is washed, should be taken care of by some form of gutter at the base, and that the water so collected in the gutter at the base of the glass should be disposed of in such a way as not to leave the inside window sill wet or rot the wood near the base of the glass. It is of course to be desired that the structure used to hold and ventilate the glass and dispose of moisture be easy of installation, and it should be easy to remove it for replacement or for cleaning out the structure.

Numerous parties had made efforts to accomplish these various results. As is usual in the different arts, the early inventors had some particular one of these desirable results in mind, and their efforts were exerted for the accomplishment of that particular result. As the art developed they began to combine the objects which they hoped to attain. Inventive genius had sufficiently developed at the time of Strayer patent, No. 416,080, November 26, 1889, so that the holding of the glass was attempted, if not accomplished, by substantially three elements, a stool or rest to support the glass at its bottom, a gutter supporting it at the back or inner side, and a brace, holding it at its front or outer edge.

The plaintiff's patent in suit contemplates the use of these three elements, but in my opinion not in such a way that they can be said to be the same elements as those of Strayer. The front holding element is different in some respects; but the particular difference, and the one which to my mind is controlling, is the difference in the inner member. The inner gutter, which Strayer shows as rigid, has no provision for ventilation, and, while it might have resiliency at a portion of its holding contacts, the method of fastening in position is such that it would be rigid at the corners of the glass. There seems to have been no thought on the part of Strayer to have this gutter resilient, and his structure was such that, even though it was in fact resilient at points away from the ends of the glass, that would be a misfortune rather than a benefit, because it was certainly not resilient at the ends. So it seems to me that he must have had in mind, so far as he contemplated that phase of the matter at all, to make it rigid. He certainly did not have the combination of elements called for by the Plym claims, and his device is but a modification of the former improvised type made by village carpenters, with a tube soldered to one end of the gutter for carrying off the water from the inner surface of the window. In the Strayer construction there is no provision for the subgutter, by which the water is carried to the outside of the setting immediately beneath the glass in such a way as to allow for ventilation by the same means which dispose of the water, as in the Plym patented device.

The change of the inner holding member from a rigid one to a resilient one was an important step in the development of the art, and I think it, together with the combination of elements of plaintiff's de-

vice, goes beyond what would be mechanical skill. While in some other combinations of elements, very different from Strayer, a resilient inner member had been shown, those other devices and structures were so different from plaintiff's device that it seems to me that it rises beyond mechanical skill to have made this inner gutter retaining member of such form, material, and structure as could be yielding and resilient and so combined with the other elements as to produce the desired results.

As I understand the development of the art and the earlier patents, Plym was the first to use in any practical way the yielding inner member, so that on pressure from the outside, where pressure is most likely to occur, the glass would be so firmly held as to keep it in place, and yet at the same time would yield sufficiently wherever the strains were exerted, so that it would not break at the edges near the holding points. Out of this invention a new combination and useful structure seems to have been created, and one that has been of real benefit and assistance to the public generally and is now in general use.

It is urged that Plym's first patent, No. 846,343, patented March 5, 1907, the application for which was copending at the Patent Office with the application for the patent in suit, covers the structure described in the patent in suit so fully and in such a way that the subsequent patent, the patent in suit, is void; the contention of the defendant in that regard being that not only should the test be applied as to whether or not the claims of the patent in suit add enough of inventive genius over the claims of Plym's prior patent to warrant the issuing of a patent, but it is claimed in addition that if from the drawings or description, or anything contained in any way in the prior patent, enough is shown of the structure of the patent in suit, so that by the use of mechanical skill, added to what is disclosed by Plym's first patent, the structure of the patent in suit could be made, then the second patent is void. In other words, defendant claims that all that Plym shows that he knew about a structure of this kind prior to the time that he filed the application for the patent in suit should be construed against him and against the patent in suit in the same way that it would be if that information had been obtained by him, prior to the time of his filing his application for the patent in suit, from some outside source, and the information had not been acquired by his own genius.

[2] I hold that the test to be applied as to the validity of the patent in suit with reference to the earlier patent is the scope and breadth of the claims of the two patents. The claim of the earlier Plym patent is for an entirely different combination of elements from the claims in suit, and hence does not affect the validity or scope of the claims of the Plym patent in suit. Century Electric Co. v. Westinghouse Electric & Mfg. Co., 191 Fed. 350, 352, 112 C. C. A. 8; Anderson v. Collins, 122 Fed. 451, 457, 58 C. C. A. 669; Bates v. Coe, 98 U S. 31, 25 L. Ed. 68.

I think it is plain from the earlier Plym patent that Plym had then conceived the idea of a resilient inner retaining gutter, but at that time he thought to accomplish the results by using that resilient inner gutter support in connection with a different combination than that shown by the claims in suit. In the first patent he shows an outer retaining

member which is rigid. It was necessary that it should be rigid, because the earlier Plym patent contains, as a part of its entire scheme, the holding of the glass on a shelf made out of and a part of the outer retaining member. It was quite a different structure from the structure of the patent in suit. I am satisfied from the record and the best thought I can give to the earlier Plym patent that it would not be a successful structure. I do not think that any structure with a resilient inner retaining member and a rigid outer retaining member would be practical. The strains from the wind on the outside of the pane would press the glass back against the resilient part which would yield, while the outer rigid member would remain firm, resulting in the glass leaving the outer rigid member on pressure of the wind, and when the pressure is withdrawn, the glass would come back and rattle against the rigid outer member. If I am correct in my views in this regard, it would make a very undesirable and impracticable structure.

In a less degree the same thing would be true if the outer member was resilient and the inner member rigid. The only reason why it would not be so objectionable would be because pressure was not exerted against it from the inside. If wind currents or other strains should come against the inside of the structure, then the same objection and unfortunate results which I have pointed out would follow, if the outer retaining member was resilient and the inner member was rigid. But I take it in actual use these wind currents and the usual pressure is upon the outside. So there would not be so much objection to a rigid inner member and a resilient outer member, so far as this disadvantageous result is concerned. I do not think there in anything in the prior art or in the earlier patents, including Plym's, that would void the patent in suit.

[3] While the art had been quite thoroughly canvassed, it seems to me that it remained for some one to find the particular combination which was necessary for practical success. I think that the patent in suit of Plym first shows the particular combination which resulted in that success which had been sought by so many and for so long. The early difficulties of the patentee, Plym, while attempting to introduce the patented device, and its subsequent commercial success, are particularly persuasive that the creation of the device of the Plym patent in suit required inventive genius. Diamond Rubber Co. v. Consolidated Rubber Tire Co., 220 U. S. 428, 31 Sup. Ct. 444, 55 L. Ed. 527; Grever v. Hoffman (C. C. A. Sixth Cir.) 202 Fed. 923, 121 C. C. A. 281; Sly Mfg. Co. v. Russell Co., 189 Fed. 61, 110 C. C. A. 625. It remains to determine as to whether the defendant's structure infringes the claims in suit. To my mind that is not so difficult a question as the question of validity.

Defendant's only contention of noninfringement is that the inner member of defendant's construction is not resilient, but, on the contrary, is rigid. Plaintiff is not entitled to insist on absolute rigidity, such as would result from direct contact of the glass with cast iron. We all know that, before any of these inventive minds gave their energy and attention to the subject, glass was supported by wood and putty, and the plaintiff cannot claim any right to exclude the use of such yielding force as comes from the materials themselves, whether

it be wood, putty, rubber, or other material. But the resiliency which the patentee Plym discovered and claimed in his patent and inherent in his device was the resiliency which comes from the shape and arrangement of material rather than the compression or indentation of the material which is used in the device.

On the other hand, the plaintiff ought not to be limited to a retaining member so resilient that it could be easily pressed aside. There is nothing in the claims that would indicate that he intended to hold the glass by a weak spring, or something that would yield easily. One little experienced in the art would recognize that it must be held firmly. There is nothing in the drawings of the patent in suit anywhere that would indicate that the plaintiff had in mind, nor do the claims contemplate, a weak holding such as could be easily pushed aside; but everything indicates that it should have strength sufficient to hold the glass in place, and that the glass shall only move when heavy pressure or abnormal strains are exerted against the glass. It is apparent that the device contemplated that it should hold the glass in place until, as nearly as possible, the strength of the glass had been exhausted, but that before the glass should break the holding member should yield, and then yield only sufficiently and so far as necessary to prevent the breaking of the glass. Of course, this could not be done to a strict nicety, but the device seems to have had in mind to accomplish that so far as possible. The nearer it comes to accomplishing that result, the nearer it accomplishes the desire the inventor had in mind, and the more useful it was in the art.

[4] The defendant contends that it does not desire to make use of this resilient construction at all, that the desire is to have a rigid inner wall, and one that would yield only in the manner as would putty and the old elements in the old art. The defendant's intention, however, has nothing to do with the question of infringement so long as it sold the infringing devices. Thompson v. Bushnell Co., 96 Fed. 238, 37 C. C. A. 456; Parker v. Hulme, Fed. Cas. No. 10,740. I am satisfied that the defendant's structure goes beyond what it had a right to do, and goes beyond the yielding quality of those old uses. While it may be less yielding than the plaintiff's structure, it is, nevertheless, sufficiently resilient so that it does make use of the principle. It comes within plaintiff's patent and the claims in suit. The effort of the defendant, it seems to me, has not been to see how nearly it could come to making what it claims to have desired, a rigid inner gutter, but rather how nearly it could come to getting the benefits of the combination shown by plaintiff's patent without infringing.

[5] Infringement is not avoided by impairment of the functions of a patented device in degree, if the features are retained. Murray v. Detroit Wire Spring Co. (C. C. A. Sixth Cir.) 206 Fed. 465, 124 C. C. A. 371; Penfield v. Chambers, 92 Fed. 630, 653, 34 C. C. A. 579. I hold that the gutter in defendant's device is resilient within the meaning of plaintiff's patent. It therefore follows that the defendant has infringed plaintiff's patent.

This finding is on the defendant's device of so-called scant brackets. It is shown by the record that those were used, and it is on that structure that the plaintiff bases its suit. The other subsequent structures

with the full bracket are not involved in this suit in any way. The use of those by the defendant is subsequent to the filing of the bill in this case, and so far as the determination of the issues before the court at this time is concerned it is irrelevant and immaterial. I have no occasion to decide whether the subsequent structure with the so-called full brackets is an infringement of plaintiff's patent.

Plaintiff is entitled to the injunction and accounting prayed, and a reference will be made to William S. Sayres, Jr., as special master, for such accounting. A decree will be entered in accordance with this opinion.

[6] I have not overlooked the decisions in other districts, all of which hold this patent valid. Some of those were consent decrees, and of course their force is greatly weakened by that fact. Others were interlocutory injunctions, and ought not to have as great weight with the court ordinarily as final hearings; yet in cases of this kind the presentation is often nearly as complete on the application for temporary injunction as on the final hearing, and the judges who have written opinions in the matters of temporary injunctions seem to have given careful attention to the question of validity. There have been two decisions on contested final hearing sustaining the validity of the plaintiff's patent. So that, in addition to my own conclusions in regard to the matter, I give weight to the previous adjudications of this patent by another District Court in this circuit and by district judges in other circuits. Murray v. Detroit Wire Spring Co., supra; Dowagiac Mfg. Co. v. Brennan, 127 Fed. 143, 145, 62 C. C. A. 257, 259; Doelger v. German-American Filter Co., 204 Fed. 274, 122 C. C. A. 472.