TOLEDO PLATE & WINDOW GLASS CO. v. KAWNEER MFG. CO.

(Circuit Court of Appeals, Sixth Circuit.   November 8, 1916.)

No. 2915.

1. PATENTS ⊕⇒66—LIMITATION—PRIOR ACT.
   A patent is not a part of the prior art as relates to another patent to the same patentee, issued later, but on an application filed before the first patent issued.
   [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 79, 81; Dec. Dig. ⊕⇒66.]

2. PATENTS ⊕⇒26(1)—INVENTION—COMBINATION OF OLD ELEMENTS.
   Although each separate element of a combination is old, there may be invention in the combination, if it produces a better result and by new means.
   [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 27–30; Dec. Dig. ⊕⇒26(1).]

3. PATENTS ⊕⇒328—VALIDITY AND INFRINGEMENT—STORE FRONT—CONSTRUCTION.
   The Plym patent, No. 852,450, for store front construction, was not anticipated, and discloses invention; also *held* infringed.

Appeal from the District Court of the United States for the Eastern District of Michigan; Arthur J. Tuttle, Judge.

Suit in equity by the Kawneer Manufacturing Company against the Toledo Plate & Window Glass Company. Decree for complainant, and defendant appeals. Affirmed.

For opinion below, see 232 Fed. 362.

Wilber Owen, of Toledo, Ohio, for appellant.

Wallace R. Lane and Clarence J. Loftus, both of Chicago, Ill., for appellee.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

KNAPPEN, Circuit Judge.  Suit on patent No. 852,450 (May 7, 1907) to Plym for improvements in store front construction.  The defenses are invalidity of the patent and noninfringement.  The District Court held the patent valid and infringed (232 Fed. 362), and made the usual decree for injunction and accounting.

The invention relates to sash rails or settings for heavy glass, especially in show windows; its object being to provide a structure for effectively supporting the plate glass, and which is capable of quick, easy, and economical installation, with provision for the ready removal of accumulated dust and dirt without disturbing the glass plate.  The device consists (aside from the glass plate) of three elements: A base for the plate to rest upon, a gutter in the rear of the plate, and an outer retaining member.  Fig. 2 of the patent drawings (here reproduced) shows in vertical section the inventor's preferred type of construction.

The arm 6 of a gutter of resilient material, M-shaped in section, is fitted against the outer edge of the show window floor 2.  The glass is supported on short channel irons, whose base portions 10 fit against the arm 6 of the gutter member, their lower arms 11 resting on the windowsill, their upper arms 12 directly supporting the glass plate.  The channel irons are secured to the show window floor by fastening devices 13.  The glass is retained securely upon its supports by a channeled strip 19, whose upper portion bears directly against the outer face of the glass plate at or near its lower margin, the channeled portion fitting around the outer edge of the shelf, terminating at its lower end in a gutter recessed, as at 24, to receive the lower arms of the channel iron.  (In other forms illustrated by the inventor the glass plate rests upon angle brackets, instead of channel irons, as shown in Fig. 1 of the drawings, also here produced.)

The M-shaped gutter has a series of drain and ventilating holes 5, the retaining strip having openings 23 for the same purpose.  In the practice of installation the gutter and the support for the glass are first secured in position, the plate being then placed on the support and against the gutter, after which the retaining strip is secured in position against the plate by the screws 24a, which extend into the show window floor 2.  The patent discloses another form, having a gutter of nonresilient material, but this form is not involved

here. The setting, minus the support for the glass, may extend along the side and top edges of the plate; and such is plaintiff's practice.

The claims in suit are Nos. 5, 6, and 7. Claim 6 reads as follows:

"6. In a construction of the character described, the combination of a shelf or support, a glass plate resting edgewise thereon, a resilient gutter exerting an outward pressure on the glass plate, and a retaining strip adjustable toward or from said support or shelf and disposed at the outer side to engage said glass plate."

Claim 7 differs from claim 6 only in including holes in the gutter and outer retaining members. Claim 5 differs from the other two claims in substituting the words "means for pressing said plate yieldingly outward" for the words "a resilient gutter exerting an outward pressure on the glass plate," and in including the gutter underlying the shelf on which the glass plate rests.

In practical construction (although not so prescribed by the patent) the gutter member, the outer retaining strip, and the base on which the glass rests are made of thin sheet copper. The advantages claimed for the device of the patent are that it furnishes a sufficient degree of resiliency in the setting to protect against breakage of the glass due to atmospheric changes, as well as to wind or other pressure against the plate from the outside; ventilation adequate to prevent the accumulation of moisture upon the inner surface of the window, liable to form hoar frost in cold weather; drainage for the protection both of the glass and the woodwork; facility in removing dirt and sediment without disturbing the glass (the outer member being readily removed); and economy and ease of setting, with reduced danger of breaking the glass in the process. The utility of the device is abundantly proved.

[3] The validity of the patent is challenged as not involving invention, in view of the prior art, including an earlier issued patent to Plym. In the art previous to Plym, setting devices involving a base for the glass plate, an inner gutter member, and an outer retaining member had been disclosed by patent; but none of these prior devices, in our opinion, anticipated Plym, or preclude invention in the patent in suit. The patents chiefly relied upon as denying such invention are Phelps (No. 736,774, 1903), Von Oven (No. 795,004, 1905), and Strayer (No. 416,080, 1889). Neither of these patents discloses Plym's inner resilient gutter member, which is an important feature of the combination of the claims in suit. Phelps' device has practically no elasticity. Von Oven has nothing which we think can properly be regarded as a resilient rear gutter strip. The resiliency afforded by Strayer's gutter member apart from its ends (and thus away from the corners of the glass) is nullified by its rigidity at the corners. Neither of the three discloses the useful combination of ventilation, drainage, elasticity, and ease of setting found in the Plym patent.

That the patent, as respects the claims in suit, discloses a device affording substantial elasticity in the gutter member, and thus in the setting, is clear. It is also satisfactorily established that plaintiff's gutter member, as manufactured and marketed, in substantial accordance in this respect with the patent in suit, affords a resilient gutter and furnishes a setting resilient to a substantial extent. The extent of the required resiliency is not easy to define; the setting must be suffi-

ciently rigid to measurably resist strains, and resilient enough to yield before the breaking point in the glass is reached. We think Plym's device meets these requirements, and that its conception involves invention as distinguished from mere mechanical skill.

Plym had, however, by patent No. 846,343, applied for before, but issued after, the application for the patent in suit, disclosed the resilient gutter shown by that patent; the "substantially V-shaped gutter" being the subject of one of the claims of that patent. Defendant insists: (1) That the first Plym patent is a part of the prior art, and that the second patent involves no invention over the first; and (2) that a double patenting of the invention of the first Plym patent has resulted.

Plym's first patent differed radically from his second patent in this respect: The shelf for supporting the plate glass was a part of the outer retaining member (as shown in the illustration below), instead of being, as in the second patent, wholly independent of that member.

FIG-4.

The second patent was not only an improvement over the first, in that it relieved the outer retaining member of the burden of carrying the heavy glass (with its tendency to weaken the retaining force of that member), with its attendant difficulty and danger of breaking the glass in the original setting, as well as in the removal of the retaining strip for cleaning and other purposes; but its retaining strip necessarily lacked the element found in each of the claims of the patent in suit, of adjustability toward or from the support for the glass. This lack of adjustability was inherent in the device of Plym's first patent. Treating the feature of adjustability of the retaining strip as intended to relate to the gutter, the result is the same.

• [1] Nor was Plym's first patent a part of the prior art as related to the second patent; the later patent having been applied for by the same inventor before the first patent issued. Century Elec. Co. v. Westinghouse Elec. Co. (C. C. A. 8) 191 Fed. 350, 352, 353, 112 C. C. A. 8. The question is not one of priority between two inventors, as in the cases in this court of Drewson v. Hartje Paper Mfg. Co., 131 Fed. 734, 739, 65 C. C. A. 548, and Elec. Controller Co. v. Westinghouse Co., 171 Fed. 83, 87, 96 C. C. A. 187, where the date of the first application is held to be prima facie the date of the first invention.

[2] But, even if part of the prior art, we think the second patent involved invention over the first. Invention in the combination is not precluded by the fact that there was nothing novel in providing an independent setting block for the glass, and an independent retaining strip drawn and held against the face of the glass. There was no double patenting of the invention, for the first did not disclose, nor did any of its claims cover, the combination of the claims here in suit. The invention of the claims of the second patent (in suit) was neither previously patented nor abandoned. The mere fact that the gutter member was made the subject of a separate claim of the first patent does not render void combination claims of the later issued patent,

including such member as one element. Notwithstanding each separate element of the combination was old, invention might, and we think did in fact, exist in the combination of the claims in suit; it effected a better result than known in the previous art, and by a new combination of means. Loom Co. v. Higgins, 105 U. S. 580, 591, 26 L. Ed. 1177; Ferro Concrete Co. v. Concrete Steel Co. (C. C. A. 6) 206 Fed. 666, 669, 124 C. C. A. 466; Loose Leaf Co. v. Kalamazoo Loose Leaf Binder Co. (C. C. A. 6) 230 Fed. 120, 127, 144 C. C. A. 418.

We have no difficulty in holding the patent valid as against the defenses made.

The question of infringement is not free from difficulty. The alleged infringing structure is manufactured by the Zouri Drawn Metals Company (which is defending this suit), under patents to Murnane, issued subsequently to all the Plym patents, and is marketed or installed by defendant in connection with its glass business. The structure in question here responds to the claims in suit unless in this respect: Its gutter is supported on cast metal brackets (25), distributed on 10-inch centers throughout the entire length of the gutter, as shown by the following drawing, Plaintiff's Exhibit 21; the base on which the glass rests not being shown:

In the devices involved in this suit the brackets do not extend quite to the web of the gutter which contacts with the glass plate, falling short of so doing by $1/32$ of an inch, more or less. Defendant contends that the use of such scant brackets was unintentional, and contrary to its instructions, the scantness being due to a natural lack of uniformity' in the castings. The outer retaining member is not drawn and held in position, as in plaintiff's device, by a screw extending therethrough into the show window floor, but by the screw 20a, which bears upon an inclined face of the lower arm of the retaining member. This manufacture is advertised as a rigid construction. The contention is that the device has not the "resilient gutter exerting an outward pressure on the glass plate" called for by claims 6 and 7, nor the "means for pressing said plate yieldingly outward" within claim 5. The bracket naturally diminishes resiliency, but whether or not defendant's gutter is nevertheless "resilient" depends upon whether the claims call for "extreme resiliency" or only for "a degree of resilience sufficient to perform a useful purpose under the conditions of practical use." [1]

We think the latter is the correct rule of construction; and we are satisfied from the evidence, including uncontroverted testimony of practical tests, that defendant's scant bracket structures, so far as made the subject of testimony here, do furnish a useful and substantial de-

[1] Language of Judge Day in Kawneer Mfg. Co. v. Ventwell Store Front Co. (D. C.) 210 Fed. 459, 461.

gree of resilience under conditions to which they would naturally be subjected in actual use.

The further contention is, however, made that defendant's gutter does not exert an "outward pressure on the glass plate," nor press it "yieldingly outward," because, as alleged, it is not put under compression in the setting operation, and thus gives no outward pressure, except by way of reaction. The patent does not in terms declare that the gutter is put under compression in the act of setting. In the description of the drawings the gutter is spoken of as "of resilient material and pressing outwardly against said plate"; the wall is described as "clamped in position by screws *24a* which extend into the floor *2*", etc.; and the retaining strip as secured in position after the gutter and shelf with glass thereon are so secured "by slipping it up against the plate and inserting and driving home the screws *24a*." It does not affirmatively appear that in defendant's setting process the gutter is subjected to such an amount of compression as to call into action an appreciable degree of resiliency before the exertion of the special strains which the gutter is designed to meet. But the gutter is evidently subjected in the setting to such a degree of compressing strain as to clamp the glass firmly between the resilient retaining strip and the gutter (thereby providing, theoretically, at least, slight pressure outward on the glass), and such that further pressure in actual use will ipso facto and immediately induce a substantial outward pressure; and this degree of pressure is, we think, all the claims in suit necessarily call for. We therefore are of opinion that defendant's scant bracket construction of the type condemned by the decree of the District Court infringes all three of these claims, and equally so whether their use was intentional or unintentional. Thompson v. Bushnell (C. C. A. 2) 96 Fed. 238, 243, 37 C. C. A. 456.

Since this suit was begun defendant seems to have used only brackets of such length as to come into actual or substantial contact with the outer web of the gutter. The District Court regarded such full bracket construction as not within the issues presented (as it was not), and so declined to determine whether or not it constitutes infringement. Plaintiff has not gone into that subject below or here, and objects to its present determination. We are not at liberty to now consider it.

A motion presented by defendant-appellant remains to be considered. The decree below was entered August 4, 1915; the transcript on appeal was filed in this court April 1, 1916; on April 19th following appellant asked permission to apply to the District Court for leave to open the decree for the admission of evidence discovered since the entry of decree. The application was passed over to the hearing on the merits. The situation on which the motion is based is briefly this: Plaintiff company was organized about January 1, 1907, succeeding another company of the same name organized in Missouri in February, 1906. Plaintiff had successfully prosecuted several infringement suits based on the patent here in suit, the decrees in none of which have been reviewed by an appellate court. Plaintiff had also a copending suit in the District Court for the Southern District of New York against the Zouri Company, based on the scant bracket structure in-

volved here. Since the decree in the instant case the Zouri Case has been decided in plaintiff's favor, and the accounting thereunder is said to be in progress. After the decree in the instant case, the defendant took, in the Zouri Case, the deposition of the inventor Plym, the head of the plaintiff company, as well as of its predecessor; he not having been a witness in the instant case. From this deposition it is said to appear that Plym admitted, first, that the structure of the first patent (No. 846,343) was manufactured exclusively by plaintiff and its predecessors up to January 1, 1907, and for a period of several months thereafter (the patent in suit having been applied for August 22, 1906); second, that in the spring of 1907 plaintiff company advertised the structure of Fig. 1 of the patent in suit in "Sweet's Indexed Catalogue for the years 1907–08" (the fact having been discovered by defendant since the decree below), prepared to manufacture it, and made an experimental installation thereof at Kenosha, Wis.; third, that plaintiff's present device, in fact made according to the descriptions and drawings of the third Plym patent (No. 879,898, applied for June 8, 1907, issued February 25, 1908), was not adopted by plaintiff until the summer of 1907; fourth, that the manufacture and sale of the structure of the first Plym patent was continued during the experimental work under the patent in suit and until plaintiff's present device was adopted. It is also shown that an examination, made since Plym's deposition, of the store front construction in Kenosha, corroborates his testimony relating thereto. Defendant asks, in the alternative, for the introduction of the entire record in the Zouri Case or for certain parts showing the facts just stated.

We think defendant's petition should be denied. It is clear that due diligence was not exercised in presenting the proposed testimony below. The Zouri Company was a regular advertiser in the catalogue referred to, and presumably familiar with the Kawneer advertisements. The edition referred to had been in the public library at Chicago and accessible to the public ever since June, 1907. Defendant's counsel introduced below a copy of the catalogue for a later year, to show the Zouri Company's advertisement. No sufficient reason is shown for not taking Plym's deposition in the instant case. He was accessible to defendant's counsel, who had been told that his production by plaintiff would depend upon the nature of defendant's testimony. His examination was not asked for except in open court, after the testimony had been considered closed, following rebuttal testimony by both plaintiff and defendant. It was not surrebuttal, and its admission was within the court's discretion, which we think was not abused. Defendant, in fact, showed in the present case the manufacture and sale by plaintiff's predecessor of the structure of the first Plym patent. The fact that it was unable to prove that plaintiff itself did the same for a short time after its organization is not highly important. While the fact that plaintiff's commercial structure is the device of the third Plym patent lessens the force of commercial success and public favor, as applied to the question of invention in the patent in suit, we have no difficulty in finding such invention independently of those considerations. Indeed, the device of the second patent is in plaintiff's commercial structure; the third patent being merely an improvement upon

the second, and so declared on the face of the patent.[2]  While it is possible that some of the adjudications in plaintiff's favor may have been made under a misapprehension of the true history of manufacture and sale of the various Plym devices, such fact, even if it exists, is not enough to justify reopening the decree.  In the *Zouri* Case, which, as already said, involves the specific structure in issue here, the testimony in question was before the court.  Some, at least, of the proposed testimony will naturally be important upon the question of profits and damages under the accounting, but its use for those purposes does not depend upon its present admission.

The petition for that purpose is accordingly denied.

The judgment of the District Court is affirmed, with costs.

---

[2] The gutter of Plym's third patent has an arm underlying the support for the glass; otherwise, it is substantially Z-shaped, instead of M-shaped, in section.