DETROIT SHOWCASE CO. v. KAWNEER MFG. CO.

(Circuit Court of Appeals, Sixth Circuit. April 5, 1918.)

No. 3089.

1. PATENTS ☞328—VALIDITY AND INFRINGEMENT—STORE FRONT CONSTRUC-
   TION.
       Patent No. 852,450, for store front construction, *held* valid and infringed.

2. PATENTS ☞238—INFRINGEMENT—UNITING TWO PARTS IN ONE.
       While infringement is not avoided by forming in one part two elements of a patented device, if the part thus formed secures the same results in substantially the same way as the two elements, a combination claim is not infringed, where one of its elements is. omitted, without the substitution of an equivalent.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. PATENTS ☞328 — INFRINGEMENT — ORNAMENTAL CONNECTION BETWEEN GLASS PLATES.

The Plym patent, No. 860,150, relating not only to store front but to showcase construction, and designed to provide a simple, strong, durable, inexpensive, and ornamental connection between glass plates, *held* not infringed.

4. COURTS ☞290—FEDERAL COURTS—JURISDICTION.

Where a patent has been held valid and infringed, the unfair competition feature arising out of that infringement may be included in an accounting for profits and damages, though the parties are citizens of the same state.

5. TRADE-MARKS AND TRADE-NAMES ☞70(1)—UNFAIR COMPETITION—WHAT CONSTITUTES.

Defendant, which appropriated plaintiff's patent for sash rail construction, is not liable for unfair competition, where there was no closer imitation of plaintiff's product than would naturally result from the appropriation.

6. TRADE-MARKS AND TRADE-NAMES ☞73(1)—UNFAIR COMPETITION—PROTECTION.

Where a word is descriptive of the article sold, it is not the subject of a trade-mark, and it will not receive protection, unless it has been so used as to have acquired a secondary meaning.

7. TRADE-MARKS AND TRADE-NAMES ☞93(3)—UNFAIR COMPETITION—EVIDENCE.

Evidence *held* insufficient to show that plaintiff had a trade-mark in the term 'almetal," under which it sold its metallic sash rails, etc., so that defendant's use of that word to describe its own metallic sash rail construction was not unfair competition.

8. TRADE-MARKS AND TRADE-NAMES ☞71—UNFAIR COMPETITION—VALIDITY OF TRADE-MARK.

The existence of a valid trade-mark is not essential to a right of action for unfair competition, where defendant palmed off its products as those of plaintiff.

9. COURTS ☞290—FEDERAL COURTS—JURISDICTION.

Where a patent was found not to have been infringed, and the parties to the suit were citizens of the same state, the federal court *held*, under the facts presented, without jurisdiction over a cause of action for unfair competition arising out of defendant's sale of the alleged infringing articles.

Appeal from the District Court of the United States for the Eastern District of Michigan; Arthur J. Tuttle, Judge.

Suit by the Kawneer Manufacturing Company against the Detroit Showcase Company. From a decree for complainant (240 Fed. 737), defendant appeals. Affirmed in part, and in part reversed and remanded, with directions.

Pagelsen & Spencer, of Detroit, Mich. (Leo M. Butzel, of Detroit, Mich., on the brief), for appellant.

W. R. Lane and Clarence J. Loftus, both of Chicago, Ill., for appellee.

Before KNAPPEN and DENISON, Circuit Judges, and SATER, District Judge.

KNAPPEN, Circuit Judge. Suit for infringement of United States patents No. 852,450, May 7, 1897, and No. 860,150, July 16, 1907, both

to Francis J. Plym, and for alleged unfair competition in connection with the making, selling, and using of the alleged infringing devices. The District Court found both patents valid and infringed, and also found for complainant on the issue of unfair competition. 240 Fed. 737. This is an appeal from the interlocutory decree for injunction and accounting on both features of the case.

[1] 1. Patent No. 852,450 (for convenience called the first patent) relates to store front construction. Claims 5, 6, and 7 are involved. This patent was before us in Toledo Plate, etc., Co. v. Kawneer Mfg. Co., 237 Fed. 364, 150 C. C. A. 378, and the claims here in suit were there held valid as against all the references to the prior art cited here. We refer to the report of that case for a description of the patent and a statement of the claims. The patent must be held valid here. On the subject of infringement, the only question is whether defendant's gutter member is "resilient," as defined in our former opinion. This question is purely one of fact. The claimed demonstration of non-resiliency presented failed to satisfy the court below, which was convinced by its own independent experiments that there was present substantial resiliency, within the definition of that term recognized in our opinion in the Toledo Case. We are satisfied that defendant's device has fully as much resiliency as had the "scant bracket" construction we held in the Toledo Case to infringe. The decree of the court below as to the first patent must be affirmed.

[2, 3] 2. Patent No. 860,150 relates not only to store front but to showcase construction, and the invention is designed to provide a simple, strong, durable, inexpensive, and ornamental connection between the glass plates. The device is well enough illustrated by Fig. 3 of the patent drawings, which is a horizontal section of one of the suggested forms which the connecting device may take, although this particular form is adapted only to the connection between two aligned plates. The device is available for plates at right angles to each other, as in corner pieces.

In the drawing 1 indicates a channeled face plate, 2 the glass plates, 3 the flanges projecting in opposite directions from the channeled plates, overlapping and bearing against the outer face of the glass plates, 4 a back plate with V-shaped wings 5, pressing the glass plate outwardly against the flanges of the face plate, 6 a stiffening bar fitting into the channeled back plate, 7 bolts extending through the front and back plates and the stiffening bar, and 8 nuts engaging the inner ends of the bolts and bar, clamping the plates in the desired relation. In practice the independent stiffening bar 6 may be dispensed with, its place being supplied by a construction of

the back plate *4* following, for example, the outlines of the bar *6,* thereby providing the needed stiffening. As thus far described the structure was old in the art. As recognized by the inventor in the specifications of his patent, the only new element provided by him is the so-called "filling strip" *9,* provided with inwardly projecting flanges *10,* between which the bolts extend and against the outer ends of which the heads of the bolts bear. The inventor declares the purpose of this filling strip to be "providing a finish for the store front or showcase and to prevent tampering with the bolts," saying:

"This filling strip is adapted to be slipped into the channel of the face plate from one end of the latter before the face plate is secured in position and after the bolts have been slipped through it, the nuts being evenly turned to clamp the parts in the desired relation."

The only claims in suit are Nos. 1 and 2, which read as follows:

"1. The combination of a channeled front plate, a back plate, a channeled filling strip occupying the channel of the front plate and headed fastening devices extending through the channeled plate and the back plate and having their heads within the channeled filling strip to be covered by the same.

"2. The combination of a channeled front plate provided with lateral flanges, a back plate of the same and provided with resilient wings, a stiffening part engaging the back plate, bolts extending through the channeled front plate, the back plate, and the stiffening part, and a channeled filling strip occupying and closing the channel of the front plate and clamped in position by said bolts."

The second claim differs substantially from the first only in calling for "lateral flanges" for the front plate, "resilient wings" for the back plate, and a "stiffening part" therefor. The validity of the claims is not assailed. The question is thus one of infringement. Defendant's structure differs from the device of the patent in this: The channel of the front plate opens inwardly, instead of outwardly, as in the device of the patent; the heads of the bolts thus being invisible from the outside. The channel of the front plate is always open, the heads of the bolts connecting the front and back plates being gripped by the inturned flanges forming the lower edges of the side walls of the channel of the front plate. It thus lacks, as a separate element, the "channeled filling strip" of the patent, which, as already said, is the only new element of the claims in suit. The learned District Judge was of opinion that the structure was identical with plaintiff's device, "excepting that the defendant, by removing the bottom part of what plaintiff calls the channel front plate, has impaired to that extent the function which that plate is to perform," and that the case is one for the application of the rules that an infringer cannot escape liability by diminishing or impairing the advantages and functions of the patented device, if he retains the substantial form, function, and manner of operation, nor by forming in one part two elements of a patented device, if the part thus formed secures the same result, in substantially the same way, as the two elements.

But the pivotal question is whether the case presented is merely that of making in one part that which before was made in two parts, the integral structure continuing to perform all the functions of the former two-part device, and in substantially the same way, or whether it falls within the rule that a combination claim is not infringed if one

of its elements is omitted without the substitution of an equivalent. Were plaintiff's invention a broad or primary one, it might be held that defendant has merely made integral what before was made in separate parts. But the patent claims, and their range of equivalents, are narrow. There was nothing new in concealing the heads of the screws, nor in the use of a round central strip. The inventor's only contribution to the art was in the form and manner of accomplishing this old result, viz. by "a channeled filling strip occupying [and closing] the channel of the front plate." Defendant has but one of these elements. If this element is a front plate at all, there is no "channeled filling strip," and for the sufficient reason that there was no occasion for one. Defendant thus has not, as we view it, merely removed the bottom part of plaintiff's channeled front plate, nor has he impaired the function of that plate, nor retained the substantial function and operation of plaintiff's device, nor secured its result in substantially the same way. It is very clear that what defendant has done is so to construct his front plate as wholly to dispense with the necessity of the function performed by a filling strip, and so with the filling strip itself. In other words, there was no occasion for a filling strip, either to provide a finish, or to prevent tampering with the bolts, or otherwise. There was thus no infringement. Union Paper Bag Mach. Co. v. Advance Bag Co. (C. C. A. 6) 194 Fed. 126, 135, 114 C. C. A. 204 et seq.; Proudfit Co. v. Kalamazoo Co. (C. C. A. 6) 230 Fed. 138, 144 C. C. A. 418.

This conclusion is not weakened by the fact that in some of its constructions defendant passes the heads of the bolts through washers which grip the edges of the channel of the face plate and prevent their spreading. The function of the washers is entirely different from that of the "filling strip" of the patent. It also seems not without pertinency that neither defendant's channeled front plate nor its washers are "adapted to be slipped into the channel of the face plate from one end of the latter before the face plate is secured in position, but after the bolts have been slipped through it." Such a method of assembling defendant's structure is impossible. It follows that so much of the decree of the District Court as found the second patent infringed must be reversed.

[4, 5] 3. *Unfair Competition.* The basis of this charge, broadly speaking, is that plaintiff and its predecessor were the first to make an all-metal store front construction, the nearest approach in the prior art being metal covered wood; that the all-metal construction is lighter, more artistic, and more easily set, and furnishes greater assurance of protection against breakage of the glass, while securing ventilation, drainage, and other desirable features; that for its product plaintiff adopted new, original, and artistic designs, also standardizing sizes —featuring in its advertising the all-metal character; that plaintiff's manufactures were received by the trade with great favor and have established a high reputation; that defendant has unnecessarily and intentionally copied plaintiff's designs, as respects nonfunctional features, not only in sash rails, division and corner bars, and other parts of a store front, but also the store front as a whole, to such an extent

as to make it impossible for the ordinary purchaser to distinguish between plaintiff's and defendant's manufacture, both as to completed structure and separate parts; that defendant is using the word "Almetal" as a trade-name for its product, and that, while defendant's name is placed on entire corner and division bars as manufactured, it does not appear often enough to be always found on shorter pieces sold to the trade. The decree, as respects unfair competition, restrains defendant—

"from making, selling, or in any manner using defendant's 'Almetal' store front constructions, *or parts thereof*, or any other construction which in its shape, design, external appearance, and distinctive features, or details are like those heretofore sold by the plaintiff [illustrated by its catalogue 'Model of Complete Construction'], or so similar to said construction that the ordinary purchaser would be likely to be deceived into purchasing store front constructions, *or parts thereof*, of the defendant's manufacture as for those of the plaintiff, and from advertising *the same* in any way, either directly or indirectly, and from advertising or using as a trade-mark, trade-name, or distinctive feature the word 'Almetal,' or any word of similar or like import, in connection with the sale of store front constructions *or parts thereof.*" (Italics ours.)

Appellant challenges jurisdiction over this branch of the case because of the lack of diversity of citizenship and the fact that the suit for unfair competition is not of a federal nature. While the authorities are not uniform, we have held [1] that, where a patent has been held valid and infringed, the unfair competition feature arising out of that infringement may be included in an accounting for profits and damages, although the parties are citizens of the same district. K-W Ignition Co. v. Temco Co., 243 Fed. 588, 591, 156 C. C. A. 286. The court below, having found both patents valid and infringed, had jurisdiction to consider the question of unfair competition as directly incident thereto; we think jurisdiction still exists with respect to the sash rail patent which we have held valid and infringed. But as to defendant's sash rail construction, considering it now independently and not as a part of a complete window front structure, we think it not the subject of damages for unfair competition; that is, of damages beyond those resulting from the mere fact of infringement, and because of the apparent lack of unnecessary and intentional imitation of plaintiff's design. Defendant's gutter rail is not ornamental; its features are merely those of utility. It seems to us no more like plaintiff's than consistent with efficiency of function alone. The retaining strip of both plaintiff and defendant take the form of moldings in common use. The types of moldings are, however, noticeably different; in other words, we find no closer imitation than would naturally be involved in the construction of the sash rail in such a way as to appropriate plaintiff's patent thereon.

[6-8] We think, also, that no sufficient basis appears for restraining the use of defendant's trade-name "Almetal" (not trade-marked) as applied to the sash rail, considering it independently, and not as a

[1] Citing Leschen Rope Co. v. Broderick, 201 U. S. 166, 172, 26 Sup. Ct. 425, 50 L. Ed. 710; Ludwigs v. Payson Mfg. Co. (C. C. A. 7) 206 Fed. 60, 65, 124 C. C. A. 194, and other cases.

part of a complete store front structure. The name itself is purely descriptive; it does not of itself indicate origin. Plaintiff would not originally have been entitled to protection had it adopted it. In fact, it was never formally adopted by plaintiff as either a trade-mark or a trade-name. Plaintiff is thus not entitled to protection, unless the name has been so used as to have acquired a secondary meaning, as indicating plaintiff's product. Kellogg Co. v. Quaker Oats Co. (C. C. A. 6) 235 Fed. 657, 149 C. C. A. 77, and cases cited. But such, we think, is not fairly shown to be the case here, at least as applied to the sash rail treated by itself. True, in plaintiff's earlier publications considerable stress was laid upon the fact that its construction was all metal. That was at least one of its attractive features; and while in the later catalogues the fact of the construction being all metal is mentioned, it has been made less prominent. The testimony that the trade regards the words "Kawneer" and "all metal" as synonymous comes only from interested witnesses, and so far as it applies to the sash rails, considered by themselves, is not persuasive, especially in view of the manufacture of all-metal sash rails for several years past by others than plaintiff. The District Judge did not regard the use of the word "Almetal" as infringing any trade-mark of plaintiff, but only as one of the "straws" indicating unfair competition. While the existence of a valid trade-mark is not essential to a right of action for unfair competition (Samson Works v. Puritan Mills [C. C. A. 6] 211 Fed. 603, 608, 128 C. C. A. 203, L. R. A. 1915F, 1107), we think it clear that, at least as applied to the sash rail (still considering it independently), the case presented does not justify enjoining defendant's use of the trade-name "Almetal."

[9] We are, moreover, of opinion that, under the rule which we recognized in the Temco Case, supra, we have no jurisdiction over the subject of unfair competition as related to the division and corner bars of the second patent, which we have held not infringed—at least as considered by themselves, and not as a part of a complete store front structure. Had the second patent been held invalid, such would have been the result under our decision in Schiebel Toy, etc., Co. v. Clark, 217 Fed. 760, 774, 133 C. C. A. 490; and the same result seems logically to follow where, as here, a patent is held not infringed, for we think the logical theory on which (in case a patent has been sustained) damages for unfair competition may be considered is that such damages are to be treated merely as "aggravation of the infringement," and recovery by way of aggravation of damages otherwise nonexistent would seem anomalous. It therefore seems clear that no relief can be given in this case for alleged unfair competition, either by way of injunction or damages, unless it be on account of the store front construction taken as a whole. There is much to be said in favor of a jurisdiction, even in the absence of diverse citizenship, to give relief for unfair competition with respect to a unitary or unified structure, the element representing whose major function is covered by a patent held valid and infringed—and regardless of the fact that certain remaining features of the unified structure have been held not to infringe other asserted patents in the same suit. Upon such a case we express no

opinion; we have no such case here. The sash rail is a minor part of the unified structure, which includes, in addition to that feature, and the features claimed to infringe the second patent, certain other unpatented features. Moreover, we have found an absence of unfair competition as respects the sash rail standing alone. While the question is not free from difficulty, we are disposed to the opinion that, in this situation and having in mind the basis on which relief for unfair competition in a patent infringement suit is made to rest, an assertion of jurisdiction to cover the question of unfair competition in making or selling the unified structure would be an unwarranted extension.

So much of the decree of the court below as relates to unfair competition is accordingly reversed, but without prejudice to such right of action, if any, as plaintiff may otherwise or elsewhere have with respect to the features not here passed upon. The record will be remanded to the District Court, with directions to enter a new decree not inconsistent with this opinion. The costs of this court, including the expense of preparing transcript, will be divided.